# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOSEPH DUSTIN BUTLER, ET AL.**                                    **CIVIL ACTION**

**VERSUS**

**MEDICAL INFORMATION**                                    **NO. 25-398-BAJ-RLB**
**TECHNOLOGY, INC.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT**.

Signed in Baton Rouge, Louisiana, on October 2, 2025.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH DUSTIN BUTLER, ET AL.                    CIVIL ACTION

VERSUS

MEDICAL INFORMATION                             NO. 25-398-BAJ-RLB
TECHNOLOGY, INC.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Joseph Dustin Butler and Mary Butler's ("Plaintiffs") Motion to Remand (the "Motion"). (R. Doc. 10). The motion is opposed by Medical Information Technology, Inc. ("Meditech"). (R. Doc. 16). Plaintiff filed a Reply. (R. Doc. 20).

**I.      Background**

On February 7, 2024, Plaintiffs filed suit on behalf of their child in the 19th J.D.C., in East Baton Rouge Parish, Louisiana, against Meditech and Woman's Hospital Foundation ("Woman's"). (R. Doc. 1-2 at 45). Plaintiffs alleged that, when their child was born at Woman's in 2023, Woman's was using an Electronic Health Record (the "EHR") manufactured by Meditech. Plaintiffs alleged "Woman's [was] involved in the design process, customization, operation, and/or human factors of the EHR[.]" (R. Doc. 1-2 at 54). Plaintiffs alleged their child was greatly harmed due to defects in the EHR; thus, Plaintiffs argued the case was being brought pursuant to the Louisiana Product Liability Act (the "LPLA") rather than the Louisiana Medical Malpractice Act (the "LMMA").

On April 18, 2024, Woman's filed a Peremptory Exception of No Cause of Action and Dilatory Exception of Prematurity, arguing the claims alleged against it were governed by the LMMA and could not be asserted until after a medical review panel proceeding. (R. Doc. 10-7).

Woman's also noted it was not a manufacturer under the LPLA such that the LPLA claims against it should be dismissed. Plaintiffs filed an opposition on June 28, 2024. (R. Doc. 10-10).

On July 23, 2024, the trial judge overruled and dismissed Woman's Peremptory Exception of No Cause of Action and Dilatory Exception of Prematurity. (R. Doc. 10-11). After Woman's appealed, the Louisiana First Circuit Court of Appeal in a split decision sustained Woman's exception of prematurity on December 23, 2024, and dismissed Plaintiffs' claims against Woman's without prejudice. (R. Doc. 10-12). After Plaintiffs sought review of that decision, the Louisiana Supreme Court denied Plaintiffs' writ application on April 8, 2025. (R. Doc. 10-13).

On May 8, 2025, over a year after commencement of the action, Meditech removed to this Court based on diversity of citizenship, because Woman's, the only non-diverse defendant, had been dismissed. (R. Doc. 1). Neither of the parties dispute that the amount-in-controversy exceeds $75,000.00.

On June 6, 2025, Plaintiffs filed the instant Motion. (R. Doc. 10). Plaintiffs argue Meditech's removal of the case was untimely because it occurred more than thirty days after (i) the Petition was served on Meditech, (ii) Meditech was served with Woman's Peremptory Exception of No Cause of Action and Dilatory Exception of Prematurity, and (iii) the day the Louisiana First Circuit Court of Appeal sustained Woman's exception of prematurity.

Plaintiffs also argue Meditech's removal was untimely because it occurred more than a year after Plaintiffs filed suit and Plaintiffs have not acted in bad faith in this case.

On June 27, 2025, Meditech filed its opposition, arguing the thirty-day removal clock did not start until the Louisiana Supreme Court denied Plaintiffs' writ on April 8, 2025, making Meditech's May 8, 2025 removal timely. (R. Doc. 16). According to Meditech, its decision to

wait until May 8, 2025 to remove was appropriate because "the Fifth Circuit recognizes that a *non-appealable* order dismissing a nondiverse defendant triggers the 30-day delay to remove in instances of improper joinder." (R. Doc. 16 at 5) (emphasis in original). Meditech argues it was not unequivocally clear and certain that Woman's was improperly joined until the Louisiana Supreme Court denied Plaintiffs' writ. Meditech also argues that the fact that removal occurred more than a year after the petition was filed is not dispositive because Plaintiffs' actions meet the bad-faith exception to the one-year limit for diversity removal.

In reply, Plaintiffs argue they were not acting in bad faith and reiterate their arguments that the removal was untimely. Further, Plaintiffs seek costs, expenses, and attorneys' fees, asserting Meditech lacked an objectively reasonable basis for seeking removal. (R. Doc. 20).

## II.    Law and Analysis

### A.    Legal Standards

The time limits for filing a notice of removal, which are provided in the removal procedure rules of 28 U.S.C. § 1446, are as follows:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
> . . .
> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b). In the context of ambiguous amount in controversy allegations, the Fifth Circuit has set forth a bright-line rule that the 30-day removal period is triggered only by an initial pleading that "affirmatively reveals on its face that the plaintiff is seeking damages in

excess of the minimum jurisdictional amount of the federal court." *Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir. 1992). With regard to triggering the 30-day time period from a defendant's receipt "of an amended pleading, motion, order[,] or other paper," the Fifth Circuit has stated, again in the amount in controversy context, that the 30-day period is triggered only where jurisdiction is "unequivocally clear and certain" from the document. *Bosky v. Kroger Texas, LP,* 288 F.3d 208, 211 (5th Cir. 2002).

The above "*Chapman* and *Bosky* [standards] apply equally to the issue of improper joinder." *McKay v. Walmart, Inc.,* No. CV 22-469-BAJ-RLB, 2022 WL 18216079, at *8 (M.D. La. Dec. 12, 2022), *report and recommendation adopted,* No. CV 22-00469-BAJ-RLB, 2023 WL 149983 (M.D. La. Jan. 10, 2023). Thus, for a removal based on improper joinder, the 30-day period begins upon (i) service of an initial pleading affirmatively revealing on its face that removal is available, or (ii) the removing defendant's receipt of an amended pleading, motion, or other paper that makes the availability of removal "unequivocally clear and certain[.]" *Id.*

28 U.S.C. § 1446(c)(1) states that a case may not be removed based on diversity jurisdiction "more than 1 year after commencement of the action, unless . . . the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." To determine whether a plaintiff has acted in bad faith, "the question is what motivated the plaintiff *in the past*—that is, whether the plaintiff's litigation conduct meant 'to prevent a defendant from removing the action.'" *Hoyt v. Lane Constr. Corp.*, 927 F. 3d 287, 293 (5th Cir. 2019) (emphasis in original) (citation omitted). "While there is no succinct Fifth Circuit standard for bad faith under § 1446(c)(1), courts within the Fifth Circuit generally focus on whether or not the removing party demonstrates conduct by the plaintiff amounting to a manipulation of the removal statute." *Antie v. McBain*, No. 6:21-cv-01460, 2021 WL 4244554, *2 (W.D. La.

5

8/11/2021) (citation omitted). A finding of bad faith requires a "transparent attempt to circumvent federal jurisdiction." *H & E Equip. Servs., Inc. v. URS Corp. Architecture, P.C.*, No. 18-690, 2018 WL 7625357, at *3 (M.D. La. Dec. 21, 2018) (citation omitted). "Satisfying the requirements for § 1446(c)(1)'s bad faith exception is . . . a 'high burden' because 'courts are reluctant to find . . . bad faith without clear and convincing proof.'" *Howard v. Winn-Dixie Montgomery, LLC,* No. 23-CV-02384, 2023 WL 8065017, at *2 (E.D. La. Nov. 21, 2023) (citation omitted). The high "burden of showing that plaintiff acted in bad faith to prevent removal lies with the removing defendant." *Levias v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 3081199, at *3 (W.D. La. June 29, 2022), *report and recommendation adopted*, 2022 WL 3050393 (W.D. La. Aug. 2, 2022) (citation omitted).

### B.    Meditech's Removal Was Untimely Under 28 U.S.C. § 1446(c)(1)

"[W]hen determining bad faith in *Hoyt*, the Fifth Circuit discussed the plaintiffs' knowledge that evidence would not support the claims against the non-diverse defendant; the timing of the dismissal relative to the one-year bar; whether the plaintiffs had received consideration for their dismissal of the non-diverse defendant; and the way the plaintiffs pursued the claims against the non-diverse defendant." *Roberson v. Respironics, Inc.,* No. 4:20-CV-174-DMB-JMV, 2021 WL 2179265, at *3 (N.D. Miss. May 28, 2021) (citing *Hoyt,* 927 F.3d at 292-93).

Meditech asserts Plaintiffs acted in bad faith because (i) they improperly joined Woman's solely to destroy diversity, (ii) they alleged Meditech was the manufacturer of the EHR and only alleged Woman's is a manufacturer in the alternative, even requesting a medical review panel, (iii) a majority of the petition concerned Meditech, (iv) they issued no discovery to Woman's, (v)

Woman's was dismissed, via Plaintiff's writ application denial, one year and two months after Plaintiffs filed suit, and (vi) there was no consideration given for Woman's dismissal.

Plaintiff argues they were not acting in bad faith because (i) they had filed an LPLA claim against Woman's and Meditech with the intent to add LMMA claims against Woman's and a collection of new parties after the medical review panel had concluded, (ii) they brought the LPLA claims against both Meditech and Woman's, not to prevent removal, but as an alternative to their non-LPLA claims in the event that either one of them was found to be a manufacturer of the EHR, (iii) their LPLA claim against Woman's was reasonable, considering Meditech admitted Woman's was involved in the design process and customization of the EHR and that Woman's possessed and used the EHR, (iv) the case against Woman's will resume once the medical review panel proceeding concludes, (v) the dismissal was involuntary and without prejudice, (vi) they did not send discovery to Woman's due to its exceptions and because Meditech revealed, in discovery, that Woman's was involved in its EHR's design, and (vii) if they are awarded damages above LMMA limits, they will seek review of the Louisiana First Circuit Court of Appeal's December 23, 2024 dismissal of Plaintiffs' claims against Woman's.

### 1. Plaintiff's Knowledge

Meditech has provided no clear and convincing evidence or reasoning to show that Plaintiffs knew it had no viable LPLA claim against Woman's. To the contrary, the record shows Plaintiffs believed Woman's could be considered a manufacturer of the EHR. First, Plaintiffs received information from Meditech that left open the possibility that Woman's could be considered a manufacturer. Meditech's Answer stated "Woman's was involved in the design process and customization of the EHR[.]" (R. Doc. 10-8 at ¶ 49). One of Meditech's discovery responses stated, regarding the EHR, that "[f]or each application area, [Woman's] provided a

core team of staff who were taught the options for workflow design and how to validate, build, and modify the dictionary tables and content to align with how Woman's Hospital intended to use the system based on the type of patients it cares for[, and a]ny modifications and/or customizations were based on the requests of Woman's Hospital." (R. Doc. 10-9 at 7). Meditech wants to have it both ways – point to Woman's as a participant in the design and implementation of the EHR, but then claim that Plaintiffs are in bad faith in naming Woman's as a defendant under the LPLA.

Second, it is clear Plaintiffs believed Woman's was a proper party under the LPLA because, when Woman's filed a Peremptory Exception of No Cause of Action and Dilatory Exception of Prematurity, Plaintiffs not only opposed the exceptions initially, but also on appeal and after, even filing a writ application with the Louisiana Supreme Court. (R. Docs. 10-11; 10-12; 10-13). Although ultimately unsuccessful, it is also worth noting that the trial judge found in Plaintiffs favor, further undercutting any argument that this claim was made in bad faith. In addition, the First Circuit ruling was not unanimous, with one judge dissenting. This factor does not, therefore, weigh in favor of finding Plaintiffs were acting in bad faith.

### 2.    Timing of Dismissal and Dismissal Consideration

Meditech likens the dismissal timing in this case to the situation in *Hoyt*. To the contrary, the instant situation is nothing like the dismissal in *Hoyt*. In *Hoyt,* a plaintiff *voluntarily* dismissed a non-diverse party two days *after* the one-year deadline expired; here, a non-diverse party was dismissed from the case *involuntarily*, on appeal, more than a month *before* the one-year deadline expired. (R. Doc. 10-12); *see Hoyt,* 927 F.3d at 292-93. The only reason the one-year deadline expired is because Meditech waited for yet another favorable ruling in state court. Further, the fact that Plaintiffs received no monetary consideration (such as a settlement) for the

dismissal has no bearing on Plaintiffs' good or bad faith; it is simply a result of the dismissal's involuntariness. Unlike in *Hoyt*, Plaintiff had no control over the dismissal of Women's. This factor does not, therefore, weigh in favor of finding Plaintiffs were acting in bad faith.

### 3.    Pursuit of Claim

As has been shown above, Plaintiffs pursued their claim against Woman's, as illustrated by the lengths they took to combat Woman's Peremptory Exception of No Cause of Action and Dilatory Exception of Prematurity. Yet, Meditech argues Plaintiffs were not truly pursuing their claim against Woman's because they never propounded discovery requests upon it. This Court disagrees with that conclusion. Discovery is often stayed pending the resolution of dispositive motions such as the exceptions filed by Woman's, and these exceptions were not resolved until April 8, 2025. (R. Doc. 10-13). Plaintiffs' choice to not propound discovery upon Woman's prior to April 8, 2025 was therefore reasonable.

Further, in cases where a lack of discovery played a role in the existence of bad faith, other questionable behaviors accompanied the lack of discovery—behaviors that are not present here. *Guerrero v. C.R. England, Inc.*, No. 7:23-CV-00053, 2023 WL 3480903, at *3 (S.D. Tex. May 16, 2023) (in addition to propounding no discovery, plaintiffs specifically admit that "neither forum Defendant did anything wrong in causing the accident."); *Walters v. Ford Motor Co.*, No. 1:19-CV-040-C, 2019 WL 13194608, at *2 (N.D. Tex. May 15, 2019) (in addition to propounding no discovery, plaintiff "only attempted to serve [the non-diverse defendant] once [and dismissed it] twelve days after the one-year removal deadline[.]"); *In re Propulsid Prod. Liab. Litig.*, No. MDL 1355, 2007 WL 1668752, at *1 (E.D. La. June 6, 2007) (in addition to propounding no discovery, plaintiff "has not given any justifiable reason for dismissing these non-diverse Defendants over three years after suit was filed."); *Flores v. Intex Recreation Corp.*,

9

No. 2:20-CV-73, 2020 WL 6385679, at *3-4 (S.D. Tex. July 2, 2020) (in addition to propounding no discovery, plaintiffs "never—for over a year—sought a default judgment against Kobus for failure to answer the petition."). Accordingly, this Court is not persuaded Plaintiffs' lack of discovery regarding Woman's while the pretrial exceptions were resolved weighs in favor of finding bad faith.

As none of the factors support a finding that Plaintiffs acted in bad faith, and do not satisfy the "high burden" of "clear and convincing proof" necessary, Meditech's removal is untimely as it occurred more than one year after the commencement of the action.[1]

### C.     Costs, Expenses, and Attorneys' Fees

"[A] court may award attorney's fees when the removing party lacks an objectively reasonable basis for removal." *Am. Airlines, Inc. v. Sabre, Inc*., 694 F.3d 539, 542 (5th Cir. 2012) (internal quotations and citation omitted). "A defendant's subjective good faith belief that removal was proper is insufficient to establish that the district court abused its discretion in awarding attorney's fees under Section 1447(c)." *Id*. at 542, n.2.

This case presents an unusual circumstance - whether Meditech's removal was objectively reasonable by (1) arguing that Plaintiffs joined Woman's as a defendant solely to defeat jurisdiction, but then (2) waiting over a year to (untimely) remove the case despite having all of the information necessary to argue that Woman's was improperly joined. As set forth above, multiple state court judges could not agree as to whether the claims against Woman's were proper, and even two justices of the Louisiana Supreme Court would have granted the writ application and heard the appeal.

---

[1] The Court, therefore, need not determine whether the removal also ran afoul of the 30 day deadline under 28 U.S.C. § 1446(b)(3) for the receipt of "other paper."

Accordingly, although the removal was clearly outside of the one year period set forth in 1446(c), the undersigned does not find that the removal was objectively unreasonable, and accordingly, does not recommend that this Court awards Plaintiffs costs, expenses, and attorneys' fees. Each party shall bear their own costs.

## III.    Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that the Motion to Remand (R. Doc. 10) be **GRANTED** and this case be remanded to the 19th J.D.C. of East Baton Rouge Parish, Louisiana.

Signed in Baton Rouge, Louisiana, on October 2, 2025.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**